UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| FREDERICK D. JONES, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-00233-TWP-DML |
| ) | |
| KELLY BROWN, PHIL KAISER, ) | |
| TRAVIS JONES, and CARRIE EAST, ) | |
| ) | |
| Defendants. ) | |

## ENTRY DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by *pro se* Plaintiff Frederick D. Jones, Sr. ("Mr. Jones") (Dkt. 44). Mr. Jones initiated this action alleging the Defendants violated his Fourth and Fourteenth Amendment rights when they searched and seized items from his son's residence without a warrant. He contends he is entitle to summary judgment on his claims. He has also filed a Motion for Factual Findings on Motion for Summary Judgment (Dkt. 77). The Defendants Kelly Brown ("Det. Brown"), Phil Kaiser ("Det. Kaiser"), Travis Jones ("Det. Jones"), and Carrie East ("Det. East") (collectively, "Defendants"), have responded in opposition to the summary judgment motion and have filed a Motion to Strike the Motion for Factual Findings on Motion for Summary Judgment (Dkt. 79). For the reasons stated below, Mr. Jones' Motions are **denied** and the Defendants' Motion to Strike is **denied as moot**.

### I.  BACKGROUND

The following fact are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the Defendants as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, much of the Defendants' version of the facts are corroborated by a police audio recording of the events that occurred on April 30, 2019. (Dkt. 63; Dkt. 64).

On April 30, 2019, the Defendants, each a detective with the New Albany Police Department, went to 320 West 8th Street in New Albany, Indiana on a follow-up investigation regarding a robbery and kidnapping that had occurred on April 25, 2019 (Dkt. 1-3; Dkt. 66-1 at 1). Det. Brown received information indicating the kidnapping victim had previously been taken to that address (Dkt. 66-1 at 1). Upon arrival, Det. Brown knocked on the door and heard a male voice from within the home say "yeah." (Dkt. 66-1). Mr. Jones answered the door and Det. Brown identified himself as the police. *Id*. Mr. Jones opened the door. *Id*. Det. Kaiser and Det. Brown stood on the deck by the door, while Det. East and Det. Jones were out of sight standing on the ground at the lower level. Det. Brown asked if he could step inside the residence to speak with Mr. Jones and Mr. Jones responded "yes sir" and allowed Det. Brown and Det. Kaiser to enter. *Id*.

Det. Brown and Det. Kaiser stepped into the kitchen of the residence and peered into the living room around the corner, noticing no one in sight. *Id*. When asked if anyone else was in the residence, Mr. Jones stated others were present, however, Det. Brown did not see anyone. *Id*. Det. Brown then asked if it would be okay if they went into the living room to talk, to which Mr. Jones replied "I would prefer you not to, but you are going to do it anyway." (Dkt. 66-1 at 2; Audio Recording, 01:58-02:07). Mr. Jones then turned around and walked into the living room and said "come on", and Det. Kaiser and Det. Brown followed.[1] (Dkt. 66-1 at 2). Det. Jones and Det. East remained in the kitchen area. (Dkt. 66-3 at 2).

---

[1] Mr. Jones denies that he led the officers into the living room (which also served as a bedroom) and denies that his statement "come on" was permission for the officers to enter. He alleges Det. Kaiser was already in the living room looking around before he finished his statement to Det. Brown. (Dkt. 47 at 1).

2

While in the living room, Det. Brown encountered an individual identified as Christopher Ashford. He then observed Mr. Jones go near a bedside table and grab an item and place it on the floor between the table and the mattress. Det. Brown believed the item to be narcotics, but because he was interested in information regarding the kidnapping, he informed Mr. Jones he was not there for that. *Id.* While speaking to Mr. Jones, Det. Brown also noticed a small zip lock bag laying on the bed and inside that zip lock bag were individually wrapped bags containing a white, crystal substance, which had the appearance of crystal methamphetamine. *Id.* After speaking with Mr. Jones for several minutes about the robbery/kidnapping investigation, Detective Brown seized the suspected narcotics and a blue glass smoking pipe that he observed in plain view.

Det. Brown informed Mr. Jones he was not overly concerned about the drugs at the moment, but was more concerned about Thursday night. He asked Mr. Jones if there were any weapons in the house, and Mr. Jones stated they could search whatever they wanted as there was nothing else in the house. *Id.* Det. Brown informed Mr. Jones he had the right to refuse the search, had the right to get a search warrant, and had the right to talk to an attorney. *Id.* Mr. Jones again stated they could search the whole house. *Id.* However, Mr. Jones identified one of the rooms as his son's bedroom, so Det. Brown informed him they would not search that room. *Id.*

The other detectives searched the premises while Det. Brown continued to talk to Mr. Jones regarding the robbery/kidnapping investigation (Dkt. 66-1 at 3). While searching the kitchen, Det. Kaiser found a small baggie containing a white crystal substance located inside a roll of aluminum foil in a kitchen drawer. (Dkt. 66-2 at 2). While searching near the bed in the living room, Det. Jones found a loose white crystal substance on a Kentucky prescription assistance card. (Dkt. 66-3 at 2). While Det. East was searching the house, she found a book containing formulas for the manufacture of methamphetamine. (Dkt. 66-4 at 2).

Mr. Jones began looking through his cell phone while the Defendants were searching the house. (Dkt. 1-6). While looking through his call log, Det. Brown stood over his shoulder and observed. (Dkt. 1-4). Mr. Jones showed Det. Brown a call from a person named Boston, that had occurred on April 25 at 9:34 p.m. (Dkt. 1-6*)*. While continuing to look through his call log, Mr. Jones received a text message asking him if he had any "boy," which Det. Brown knew to mean heroin based on his training and experience. *Id*. Det. Brown then advised Mr. Jones of his *Miranda* rights. *Id*. Det. Brown subsequently asked Mr. Jones if there was any heroin in the house. (Dkt. 66-1 at 3). Mr. Jones acknowledged he understood his rights, but denied having any heroin in the house. *Id*. Mr. Jones admitted the methamphetamine that had already been seized belonged to him, and also admitted the book containing recipes to manufacture methamphetamine also belonged to him. *Id*. at 3-4.

Later, Det. Brown was speaking with Mr. Jones on the porch and Mr. Jones informed him that "he did not live at the house but came there and stayed". *Id*. at 4. Mr. Jones reiterated he would take responsibility for the items belonging to him which had been seized up to that point. *Id*. Mr. Jones then inquired if the officers had a search warrant. *Id*. Det. Brown asked Mr. Jones if he wanted the Defendants to stop searching, to which Mr. Jones replied that he did want the search stopped. *Id*. Det. Brown instructed the officers to stop the search, and the search ended. *Id*. Mr. Jones denied owning the drugs found in the kitchen, but acknowledged that he had access to them. *Id*. He also admitted that he sold drugs to pay for his drug habit. *Id*.

Det. Brown then requested that Mr. Jones cooperate regarding his drug suppliers, in order to make any "potential charges relating to his possession of narcotics go away." *Id*. He asked Mr. Jones for his cell phone number and told him that either Det. Brown himself or another New Albany Police officer would contact him. *Id*.

4

The narcotics and paraphernalia seized were placed into evidence and sent to the Indiana State Police Laboratory Division for testing. (Dkt. 66-1 at 5, 9-10). Sometime later, Officer Andrew Byrne contacted Mr. Jones to speak with him regarding his drug suppliers and make arrangements for Mr. Jones cooperate. Because Mr. Jones declined to cooperate, on May 17, 2019, Det. Brown submitted a probable cause affidavit for Mr. Jones possession of methamphetamine and possession of drug paraphernalia. *Id*. On May 21, 2019, Mr. Jones was charged in state court with one count of possession of methamphetamine in violation of Ind. Code § 35-48-4-6.1(a) and one count of possession of paraphernalia in violation of Ind. Code § 35-48-4-8.3(b)(1). (Dkt. 1-5).

On November 6, 2019, Mr. Jones filed a Complaint initiating this action, asserting claims for violations of his Fourth and Fourteenth Amendment rights under 28 U.S.C. § 1331. (Dkt. 1).

## II.    LEGAL STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

### III.  DISCUSSION

The Defendants assert that summary judgment is inappropriate because the designated evidence shows that Mr. Jones consented to the search of the living room and subsequently of the entire house, and that any narcotics seized prior to Mr. Jones providing consent were found in plain

6

view. (Dkt. 65 at 2). The Court will first address the summary judgment motion before truing to the parties' additional filings.

A. **Summary Judgment**

Relying on *Chimel v. California,* Mr. Jones argues the officers needed a warrant to search his son's home.[2] (Dkt. 47). He asserts that he is entitled to summary judgment on his claims that the Defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution when they conducted a search of his son's house where he was staying. (Dkt. 44). Mr. Jones concedes that he allowed the officers to enter his son's house and step into the kitchen; however, he denies that he consented to their entering the living room where the seized items were located. He argues that his statement "I rather you don't" clearly expressed to officers that he was telling them "no," when they requested permission to search the residence. (Dkt. 47 at 3). He argues that his statement that the officers "would do what the hell they wanted to anyway", *id*. at 1, was not permission for them to search, and Det. Kaiser" was already entering into the next room looking around before [Mr. Jones] ever finished his statement to detective Brown". *Id.* He also argues that Det. Brown failed to include this information in the probable cause affidavit. (Dkt. 47 at 2). "[I]t is improper for the police to mislead Judge [sic] by failing to disclose evidence questioning the search and finding of the evidence," and Mr. Jones alleges Det. Brown did just that. *Id.* (quoting *Neaby v. State*, 701 N.E.2d 593, 596 (Ind. Ct. App. 1998)).

Because of these factors, Mr. Jones contends anything found during the unconstitutional search of the living room or thereafter is fruit of the poisonous tree. Thus, he argues judgment as a matter of law is appropriate on his claim that Defendants violated his constitutional rights.

---

[2] *Chimel* is a 1969 United States Supreme Court decision in which the court held that police officers arresting a person at home could not search the entire home without a search warrant, but police may search the area within immediate reach of the person. *Chimel v. California*, 395 U.S. 752, (1969).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "In the typical case, a seizure of personal property [is] per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *U.S. v. Jackson*, 598 F.3d 340, 346 (7th Cir. 2010) (internal quotations omitted). "Because a person may voluntarily waive his Fourth Amendment rights, no warrant is required where the defendant consents to a search." *U.S. v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000) (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)). In a criminal matter, the government has the burden of proving consent by a preponderance of the evidence. *Jackson*, 598 F.3d at 346. However, because this is a civil matter, Mr. Jones has the burden to show the Defendants' search was unreasonable. (*See Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997)).

"Although a third party generally cannot consent to a warrantless search of another's home, there is an exception when the government can show by a preponderance of the evidence that the third party 'possessed common authority over, or other sufficient relationship to, the premises or effects sought to be inspected.'" *U.S. v. Ryerson*, 545 F.3d 483, 487 (7th Cir. 2008). "Common authority rests on mutual use of the property by persons generally having joint access or control for most purposes.…" *Illinois v. Rodrigues*, 497 U.S. 177, 181 (1990) (internal quotations omitted). Thus, "where a defendant allows a third party to exercise actual or apparent authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents." *Basinski*, 226 F.3d at 834 (citing *Matlock*, 415 U.S. at 171 n. 7; *United States v. Jensen*, 169 F.3d 1044, 1049 (7th Cir. 1999)). Under the "apparent authority type of third-party consent, the government must show that a reasonable

8

person, with the same knowledge of the situation as that possessed by the government agent to whom consent was given, would reasonably believe that the third party had authority over the area to be searched." *Illinois*, 497 U.S. at 188; *United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1990).

"As a general rule, the exclusionary rule prohibits introduction of evidence that the police obtained illegally." *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The rule "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. U.S.*, 564 U.S. 229, 232 (2011). "The exclusionary rule is not limited to the 'primary evidence obtained as a direct result of an illegal search or seizure, but also applies to evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree.'" *Gentry v. Sevier*, 597 F.3d 838, 850 (7th Cir. 2010) (quoting *United States v. Budd*, 549 F.3d 1140, 1144 (7th Cir. 2008)). However, under the plain view doctrine, it is constitutional for police officers to seize incriminating evidence without a warrant when (1) the officer does not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the evidence is in plain view and (3) its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990).

The Defendants argue that Mr. Jones has designated no evidence to establish that he did not have actual authority to consent to the search. (Dkt. 65 at 11). Instead, the designated evidence clearly establishes that Mr. Jones is not entitled to summary judgment. Defendants assert the facts available to them "at the moment Mr. Jones consented to the search made it reasonable for them to believe Mr. Jones had authority to grant consent." *Id*. Specifically,

> [f]irst, Jones was the person who answered the door…. Second, Jones allowed the Defendants to come into the house…. Third, the presence of Jones' bed in the living room … indicated Jones was living there…. Fourth, although Jones eventually told the Defendants he was not the owner of the house, he told them he was staying

9

>there, which was also indicative of Jones possessing authority over the premises. Finally, Jones identified his son's room specifically as the area of the house he did not control or possess authority over.

(Dkt. 65 at 11).

The Defendants' argument is persuasive. Apparent authority exists when the facts available to the officer at that time would give a reasonable person the belief that the individual consenting has the authority to do so over the premises. At all relevant times, Mr. Jones held himself out, if not as the owner of the house, as someone who had been living there and had the authority to invite the officers into the house. Mr. Jones specifically made his son's bedroom off limits while granting the officers the ability to search the rest of the house. This designated evidence shows that Mr. Jones had the authority to grant consent to search the house.

The Court will next address the evidence regarding whether Mr. Jones gave consent for the Defendants to search the premises. Mr. Jones presents two theories to argue the items found during the search are inadmissible. First, under the exclusionary rule, in reliance on *Mapp v. Ohio*, he asserts the items seized from the search were seized in violation of the Fourth Amendment and therefore cannot be used as evidence against him. (Dkt. 47 at 2). He then argues the fruit of the poisonous tree doctrine also makes this evidence inadmissible because "any evidence that police officers seize or any information that police officer[s] obtain as a direct result of an improper search" is inadmissible, and Mr. Jones argues the search of the residence was improper. *Id.* at 3. Second, he argues Det. Brown did not obtain a warrant to conduct a search of digital information on his cell phone, but the detectives conducted a search anyway and used this information in the affidavit to obtain an arrest. *Id.* He argues that "saying you are doing it or going to do it anyway does not give consent," *id.*, and Mr. Jones concludes he is entitled to summary judgment because he did not give consent to the Defendants, therefore, they violated his Fourth Amendment rights.

10

The Defendants contend the audio evidence and Det. Brown's affidavit establish that Mr. Jones consented to the officers entering the house located at 320 West 8th Street. (Dkt. 65 at 10). The designated evidence supports that Mr. Jones opened the door to the house and when Det. Brown asked if he and the other officers could enter and talk, Mr. Jones replied "yes sir." *Id.* When Det. Brown asked Mr. Jones if it was okay to go into the living room to talk, Mr. Jones stated "I would prefer you not to, but you are going to do it anyway...come on." (Dkt. 65 at 3). The Defendants contend this evidence establishes Mr. Jones consented to them entering the living room of the residence. *Id.*

The designated evidence—in particular the audio recording of the search—supports that either before or after they entered the living room, Mr. Jones consented. When asked if they could move from the kitchen to the living room to talk, Mr. Jones replied "I mean, I would prefer you not to, but you are going to do it anyways." (Audio Recording, 01:58-02:03). Mr. Jones then states "come on." (Audio Recording, 02:05-02:07). Although Mr. Jones attest otherwise, Det. Brown and Det. Kaiser affirm in their affidavits that they entered the living room after he gave them consent. Considering the evidence in the light most favorable to Defendants, the Court must accept Det. Jones' version that Mr. Jones said "come on" to him and Det. Kaiser, and they followed him into the living room. (Dkt. 66-1 at 2). Defendants also argue that because Mr. Jones consented to their entering the living room from the kitchen, anything subsequently found in the living room during their search is admissible evidence. Thus, the exclusionary rule and the fruit of the poisonous tree doctrine do not apply as it was a legal, permissible search. Moreover, the designated evidence supports that after being informed of his rights by Det. Brown, including the right to refuse the search, Mr. Jones informed the Defendants they may search the entire house. When Mr. Jones withdrew his consent, Det. Brown instructed the Defendants to stop searching.

The search did not resume after the withdrawal of consent. A reasonable factfinder could easily conclude that Mr. Jones consented to the search. Accordingly, summary judgment for Mr. Jones is not appropriate and his Motion is **denied**.

### B.  Additional Filings

Mr. Jones filed a Motion for Factual Findings on his Motion for Summary Judgment on May 26, 2020. (Dkt. 77). In his Motion, Mr. Jones avers that the only disputed fact is whether he said "come on" or motioned for the Defendants to enter the next room and, second, that the Defendants lied on the probable cause affidavit. *Id.* Additionally, he seeks to change the amount of monetary damages requested from the Defendants to include any additional time of incarceration. *Id.* The Defendants subsequently filed a Motion to Strike the Motion for Factual Findings on Motion for Summary Judgment (Dkt. 79). Defendants state that to the extent the motion contains additional factual assertions and/or arguments in favor of Mr. Jones' Motion for Summary Judgment, the Court should strike it from the record because Mr. Jones' Motion for Summary Judgment was already fully briefed. In light of the Court's determination above denying summary judgment, the Court **denies as moot** both of these related motions.

### IV.  CONCLUSION

For the reasons stated above, Plaintiff Frederick D. Jones, Sr.'s Motion for Summary Judgment, dkt. [44], is **DENIED**. Mr. Jones' Motion for Factual Findings on his Motion for Summary Judgment, dkt. [77], is **DENIED as moot**. The Defendants' Motion to Strike the Motion for Factual Findings on Motion for Summary Judgment dkt. [79], is **DENIED as moot.**

SO ORDERED.

Date: 8/31/2020

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Frederick D. Jones, Sr., #157783
KIRBY CORRECTIONAL FACILITY
P.O. Box 150
Mt. Meigs, Alabama  36057

Cory J. Dunn
KIGHTLINGER & GRAY LLP
cdunn@k-glaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe-@k-glaw.com